UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALBERTO G. TREJO,

                        Plaintiff,                  Civil Action No. 16-11537
                                                      Honorable Denise Page Hood
                                                      Magistrate Judge David R. Grand

v.

COMMISSIONER OF
SOCIAL SECURITY,

                        Defendant.
_____/

## REPORT AND RECOMMENDATION
## ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [15, 18]

Plaintiff Alberto Trejo ("Trejo") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions [15, 18], which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

## I.      RECOMMENDATION

For the reasons set forth below, the Court finds that substantial evidence supports the Administrative Law Judge's ("ALJ") conclusion that Trejo is not disabled under the Act. Accordingly, the Court recommends that the Commissioner's Motion for Summary Judgment [18] be GRANTED, Trejo's Motion for Summary Judgment [15] be DENIED, and that, pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision be AFFIRMED.

## II.      REPORT

### A.      Procedural History

This case has a fairly unusual procedural history. In May 2008, ALJ B. Lloyd Blair

issued a decision finding that Trejo was not entitled to disability insurance benefits ("DIB") or SSI because he was not disabled.  (Tr. 112-19).  On August 31, 2011, this Court upheld that determination.  (Tr. 120-24).

Just a few months later, on December 27, 2011, Trejo filed new applications for DIB and SSI, alleging disability as of September 7, 2005, due to back problems, failed surgery on his back, and diabetes.  (Tr. 125, 276-78, 284-89).  These applications were denied initially on June 21, 2012.  (Tr. 175-78, 186-89).  After a hearing (Tr. 74-108), ALJ Kevin Detherage issued a written decision on July 10, 2013, finding that Trejo was not disabled under the Act (Tr. 154-64).  Subsequently, in October 2014, the Appeals Council vacated ALJ Detherage's decision and remanded the matter for a new hearing and decision.  (Tr. 169-71).  ALJ Kendra Kleber held that hearing on February 27, 2015,[1] where Trejo, who was represented by attorney Matthew Taylor, testified, along with vocational expert Toni McFarland.  (Tr. 49-72).  On April 7, 2015, ALJ Kleber issued a written decision finding that Trejo is not disabled under the Act.  (Tr. 23-41).  On March 15, 2016, the Appeals Council denied review.  (Tr. 1-6).  Trejo timely filed for judicial review of the final decision on April 28, 2016.  (Doc. #1).

### B.      Framework for Disability Determinations

Under the Act, SSI is available only for those who have a "disability."  *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  The Act defines "disability" as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §1382c(a)(3)(A).  The Commissioner's regulations provide that a disability is to be

---

[1] Prior to this hearing, Trejo amended his alleged disability onset date to March 22, 2010.  (Tr. 372).  As Trejo correctly acknowledged (Tr. 50-51, 372), this precluded him from receiving DIB because, in order to receive those benefits, Trejo had to establish disability prior to June 30, 2008, his date last insured (Tr. 139).  Thus, this case concerns only Trejo's application for SSI.

determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. § 404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).  "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]."  *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

### C.     Background

#### 1.     *Trejo's Reports and Testimony*

At the time of the 2015 administrative hearing, Trejo was 46 years old, and at 5'6" tall, weighed 265 pounds.  (Tr. 53, 318).  He completed high school and one year of college but had no further education or training.  (Tr. 319).  Previously, he worked as a landscaper, delivery driver, and cook, but he was injured while working as a landscaper in 2005 and has not worked since that time.  (Tr. 53, 318-19, 336).

3

Trejo alleges disability primarily as a result of back and leg pain, failed back surgery, and diabetes. (Tr. 52, 55, 318). He asserts that severe back pain affects his ability to lift, bend, stand, walk, sit, and concentrate, and requires him to lie down frequently during the day (at least once an hour, for approximately ten minutes at a time). (Tr. 58-59, 324). He testified that he uses a cane for standing, walking, and balancing "when [he is] going to be places for a long time." (Tr. 55-56). He uses Vicodin and medical marijuana for pain. (Tr. 62, 320).

In terms of his daily activities, Trejo is generally able to care for his own personal needs, although he has some difficulty putting on his socks and shoes. (Tr. 325). He also is able to care for his dog, prepare simple meals, dust, put dishes in the dishwasher, shop for groceries, and drive, but his back pain prevents him from doing yard work. (Tr. 325-27). He has difficulty sleeping, waking several times at night due to pain. (Tr. 60, 325). He can stand for 10 minutes, walk for 20 minutes, and sit for 20-30 minutes at a time. (Tr. 56, 58). Trejo further testified that he gets "angry a lot" because he can no longer do certain things. (Tr. 59-60). In addition, he says he "sometimes" has difficulty concentrating, focusing, and remembering things. (Tr. 61).

### 2.    *Medical Evidence*

The Court has thoroughly reviewed Trejo's medical record. In lieu of summarizing his medical history here, the Court will make references and provide citations to the record as necessary in its discussion of the parties' arguments.

### 3.    *Vocational Expert's Testimony*

Toni McFarland testified as an independent vocational expert ("VE") at the 2015 administrative hearing. (Tr. 63-72). ALJ Kleber asked the VE to imagine a claimant of Trejo's age, education, and work experience who can perform light work, with the following additional limitations:  can lift or carry up to 20 pounds occasionally and 10 pounds frequently; can stand or

4

walk up to three hours of an eight-hour workday for 30 minutes at a time; can sit up to five hours of an eight-hour workday for 60 minutes at a time; cannot operate pedals with either lower extremity, climb ladders or scaffolds, or walk on uneven surfaces; can occasionally climb ramps or stairs, stoop, and kneel; no commercial driving; can perform simple, routine, repetitive tasks in an environment involving no more than occasional and superficial interaction with the public or coworkers; and can perform work that is routine and predictable, defined as no more than occasional changes in the work to be performed or in the work setting.  (Tr. 65-66).  The VE testified that the hypothetical individual would not be capable of performing any of Trejo's past relevant work.  (*Id.*).  However, the VE testified that the hypothetical individual would be capable of working in the jobs of inspector and hand packager (113,000 jobs nationally), garment sorter (112,000 jobs), and office helper (86,000 jobs).  (Tr. 66-67).

> **D.      The ALJ's Findings**

At Step One of the five-step sequential analysis, ALJ Kleber found that Trejo has not engaged in substantial gainful activity since December 27, 2011 (the application date).  (Tr. 27).  At Step Two, she found that Trejo continues to have the severe impairments of degenerative disc disease of the lumbar spine and obesity that ALJ Blair found in his 2008 decision.  (*Id.*).  At Step Three, ALJ Kleber found that Trejo's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment.  (Tr. 31).

ALJ Kleber then found that Trejo retains the residual functional capacity ("RFC") to perform light work, with the following additional limitations:  can lift or carry up to 20 pounds occasionally and 10 pounds frequently; can stand or walk up to three hours of an eight-hour workday for 30 minutes at a time; can sit up to five hours of an eight-hour workday for 60 minutes at a time; cannot operate pedals with either lower extremity, climb ladders or scaffolds,

or walk on uneven surfaces; can occasionally climb ramps or stairs, stoop, and kneel; no commercial driving; can perform simple, routine, repetitive tasks in an environment involving no more than occasional and superficial interaction with the public or coworkers; and can perform work that is routine and predictable, defined as no more than occasional changes in the work to be performed or in the work setting.  (Tr. 32).

At Step Four, ALJ Kleber determined that Trejo is unable to perform any of his past relevant work.  (Tr. 38).  At Step Five, she concluded, based in part on the VE's testimony, that Trejo is capable of performing a significant number of jobs that exist in the national economy. (Tr. 40).  As a result, ALJ Kleber found that Trejo is not disabled under the Act.  (Tr. 41).

### E.        Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. §405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted).  In deciding whether substantial evidence supports the ALJ's

decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) ("if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion'").

## F.     Analysis

Trejo argues that ALJ Kleber erred in three respects:  (1) giving *res judicata* effect to the 2008 opinion of ALJ Blair pursuant to *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir.

1997); (2) finding no severe mental impairment at Step Two; and (3) discounting the medical opinions of his treating physician, Daniel Duffy, D.O.  (Doc. #15 at 13-27).  Each of these arguments is addressed below.

> 1.   *The Court Finds No Error Warranting*
> *Remand in ALJ Kleber's Application of Drummond*

On May 23, 2008, ALJ Blair denied Trejo's prior disability application, finding that his lumbar spine impairment prevented him from doing his past relevant work, but that he was able to perform a reduced range of light duty work that provided a sit/stand option at will.  (Tr. 112-19).  Trejo filed a second application for disability benefits in December 2011, and in his 2013 decision, ALJ Detherage, citing *Drummond*,[2] noted that "absent evidence of an improvement or change in condition" since the prior hearing, he was unable to determine an RFC different from that previously assessed.  (Tr. 154-55).  ALJ Detherage then specifically found "a new and material change in [Trejo's] condition" and concluded that *Drummond* did not apply.  (Tr. 155).

Subsequently, however, the Appeals Council vacated ALJ Detherage's decision and remanded the case for further proceedings.  (Tr. 169-71).  On remand, ALJ Kleber also indicated that ALJ Blair's 2008 decision mandated that she consider *Drummond*; contrary to ALJ Detherage, however, she found that "*Drummond* is clearly applicable to this case" because there was no material change in Trejo's impairments.  (Tr. 24, 25, 28).  But, rather than simply adopt ALJ Blair's RFC finding that Trejo could perform a reduced range of light duty work with a sit/stand at will option, ALJ Kleber further specified:

> I have largely adopted Judge Blair's assessment of Mr. Trejo's residual

---

[2] In *Drummond*, the Sixth Circuit held that "[w]hen the Commissioner has made a final decision concerning a claimant's entitlement to benefits, the Commissioner is bound by this determination absent changed circumstances."  *Id.* at 842.  Thus, if an earlier ALJ makes a finding regarding a claimant's RFC, a later ALJ is bound by that RFC determination absent evidence to the contrary. *See Gay v. Comm'r of Soc. Sec.*, 520 F. App'x 354, 356 (6th Cir. 2013).

> functional capacity, but added clarity as to the frequency with which he is likely to need to change position, limited him to simple routine repetitive tasks in light of sleep apnea and diabetes, and finding him able to perform with limited contact with others and stress in light of his mild depressive symptoms and his pain.

(Tr. 32).  Trejo now asserts that ALJ Kleber provided "no path of reasoning to this reviewing Court on why she disregarded ALJ Detherage's holding of a new and material change in [his] health …."[3]  (Doc. #15 at 15).  For the reasons set forth below, this argument is unpersuasive.

First, to the extent Trejo argues that remand is warranted because ALJ Kleber improperly applied *Drummond*, such an argument is misplaced.  As set forth above, in his 2008 decision, ALJ Blair found Trejo capable of performing a reduced range of light duty work.  (Tr. 112-19).  Subsequently, ALJ Kleber found that Trejo retains the RFC to perform a reduced range of light work, with additional nonexertional limitations of simple, routine, repetitive tasks in an environment involving no more than occasional and superficial interaction with the public or coworkers; and work that is routine and predictable, defined as no more than occasional changes in the work to be performed or in the work setting.  (Tr. 32).  Thus, ALJ Kleber actually found Trejo *more* limited nonexertionally than did ALJ Blair, which distinguishes this case from *Drummond*, where the second ALJ found a *less* restrictive RFC than did the initial ALJ.  For this reason alone, *Drummond* does not warrant remand.[4]  *See Kepke v. Comm'r of Soc. Sec.*, 2015

---

[3] Trejo also argues that ALJ Kleber erred in offering "no rationale for why she reopened the *Drummond* issue when ALJ Detherage's finding on this issue was not appealed by either party." (Doc. #15 at 15).  But, Trejo offers no support for the proposition that ALJ Kleber should *not* have made her own determination as to whether *Drummond* applied.  And, indeed, where ALJ Detherage's decision was vacated by the Appeals Council, ALJ Kleber was not bound by his findings.  *See Wireman v. Comm'r of Soc. Sec.*, 60 F. App'x 570, 571 (6th Cir. 2003).

[4] ALJ Detherage's RFC finding included the option to sit/stand at will, while ALJ Kleber's did not (instead providing that Trejo can stand or walk up to three hours of an eight-hour workday for 30 minutes at a time and sit up to five hours of an eight-hour workday for 60 minutes at a time).  However, this difference is irrelevant where the VE testified that the three jobs ALJ Kleber relied on in finding Trejo not disabled – inspector and hand packager, garment sorter, and

WL 348747, at *16 (E.D. Mich. Jan. 23, 2015) ("this case is differentiated from *Drummond* in that the ALJ ultimately found Plaintiff more restricted in terms of the current RFC than the prior decision"); *Jackson v. Comm'r of Soc. Sec.*, 2016 WL 1267145, at *11 (E.D. Mich. Feb. 11, 2016) (no violation of *Drummond* where "the latter RFC determination was *more* restrictive") (emphasis in original).

Moreover, to the extent Trejo asserts that ALJ Kleber should have provided a "path of reasoning" as to why she disagreed with ALJ Detherage's prior determination that *Drummond* did not apply (Doc. #15 at 15), such an argument is without merit.  In *Shepard v. Comm'r of Soc. Sec.*, 2017 WL 104095, at *3-4 (W.D. Mich. Jan. 11, 2017), the court considered a similar argument, where the plaintiff asserted that the ALJ erred by failing to explain her reasons for adopting an RFC that was materially different from that contained in a prior ALJ's subsequently-vacated decision.  In that case, the plaintiff argued that "the ALJ should have [] explained why she was adopting a different RFC given the fact that both ALJs were considering the same closed period at issue."  *Id.* at *4.  The *Shepard* court disagreed, stating that what was apparent from the Appeals Council's remand order was "the fact that the prior ALJ got it wrong," and there was no reason to require the ALJ "to revisit a prior decision that was unsupported by substantial evidence."  *Id.*  Here, too, where ALJ Detherage's decision was vacated, the Court finds that ALJ Kleber was not required to explain why she reached a different decision than he did as to the application of *Drummond*.  For these reasons, then, the Court is not persuaded by Trejo's *Drummond*-related arguments.[5]

---

office helper (Tr. 41) – could be performed with a sit/stand option (Tr. 69).  Thus, any error by the ALJ as to this issue is harmless and does not warrant remand.

[5] To the extent Trejo substantively argues that *Drummond* does not apply because his condition materially changed after ALJ Blair's decision, he relies on the notes from a March 22, 2010 visit to his treating physician, Daniel Duffy, D.O., where Dr. Duffy wrote:  "Until this date it [was]

2.    *Any Errors ALJ Kleber Made in Evaluating*
*Trejo's Mental Impairment are Harmless*

In his 2008 decision, ALJ Blair found that Trejo had no severe mental impairments.  (Tr. 114).  ALJ Kleber followed suit, specifically referencing ALJ Blair's decision in the process.  (Tr. 27-28).  Trejo now appears to argue that the evidence shows a deterioration in his mental health following ALJ Blair's decision such that ALJ Kleber should have found his depression to be a severe impairment.[6]  (Doc. #15 at 19-21).

---

always felt that he was [cap]able of light duty work.  Today with a combination of physical and mental strain it does not appear that that will be the case.  Instead I have told him that I believe he is disabled from working today."  (Tr. 448).  *But see* Tr. 415 (*June 20, 2007* note by Dr. Duffy stating, "I really do not see how Trejo can work at this point.").  ALJ Kleber specifically considered this opinion, accepting it to the extent it concluded that Trejo was unable to return to his past work, but rejecting it insofar as it concluded that Trejo could not perform other types of work.  (Tr. 35).  In doing so, ALJ Kleber articulated several good reasons for her decision to afford this opinion less than controlling weight.  First, ALJ Kleber noted that Dr. Duffy's opinion on the ultimate issue of disability was not due any specific deference, as the question of whether an individual is disabled under the Act is an issue reserved to the Commissioner.  (Tr. 35 (citing 20 C.F.R. § 416.927(e)(1))).  ALJ Kleber also discounted Dr. Duffy's opinion because he failed to sufficiently explain how he reached his conclusion, an omission the ALJ found especially troubling given that Trejo's physical examination findings – including that his neck, back, and all four extremities were "functional for normal activities" – had not changed since his prior visit.  (Tr. 35 (citing Tr. 446, 448)).  Third, ALJ Kleber noted that these normal "functional" findings remained the same during Trejo's November 15, 2010 visit to Dr. Duffy.  (Tr. 27 (citing Tr. 452)).  Indeed, at that appointment, Trejo reported that he "generally feels improvement" and denied fatigue.  (Tr. 452).  Fourth, ALJ Kleber mentioned that "[o]n May 18, 2011 [Trejo] told Dr. Duffy that although his pain 'is still present it is not as disabling.'"  (Tr. 27 (citing Tr. 453)).  While that medical record indicates that Trejo still reported problems with his pain management, it also states that he experienced "improvement in his general activity," and that he denied trouble sleeping, pain, weakness and numbness.  (Tr. 453).  Although Trejo points to certain evidence that conflicts with these findings (Doc. #15 at 24-26), "[t]he question is not whether there is evidence in the record on which the ALJ might have reasonably reached a different conclusion, but whether there was substantial evidence in the record to support the determination that he *did* reach."  *Bishop ex rel. M.B. v. Comm'r of Soc. Sec.*, 2009 WL 3207155, at *4 (W.D. Mich. Sept. 23, 2009) (internal quotations omitted) (emphasis in original).  Thus, the Court finds no error in ALJ Kleber's evaluation of Dr. Duffy's March 2010 opinion.

[6] To the extent Trejo argues that because ALJ Detherage found a severe mental impairment in his 2013 decision (Tr. 157), ALJ Kleber was required to do so as well, such an argument fails.  ALJ Detherage's decision was vacated (Tr. 169-71), and therefore does not constitute a final decision of the Commissioner that binds ALJ Kleber's analysis.  *See Wireman*, 60 F. App'x at 571;

The applicable regulations generally define a "severe" impairment as an "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities . . . ." 20 C.F.R. § 416.920(c). Basic work activities are defined in the regulations as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b). The Sixth Circuit has "characterized step two of the disability determination process as a *de minimis* hurdle." *Despins v. Comm'r of Soc. Sec.*, 257 F. App'x 923, 929 (6th Cir. 2007) (internal quotations omitted).

In this case, Trejo has pointed to medical evidence suggesting that the ALJ erred in not finding his mental impairment to be "severe" under this standard. For example, Trejo first cites treatment notes from his March 22, 2010 visit to his treating physician, Daniel Duffy, D.O., at which time Dr. Duffy indicated that Trejo "has pain with activity which causes a mood disorder" and that, as a result of "a combination of physical and mental strain," he believed Trejo incapable of working. (Tr. 448). Second, Trejo cites the June 12, 2012 report of consultative examiner Janette Caputo, Ph.D., Psy.D. (Tr. 497-501). Trejo complained to Dr. Caputo of back pain, weak legs, diabetes, poor sleep, and a bad temper. (Tr. 497-98). On mental status examination, his memory and cognition were intact, but he was "tearful and plaintive," with a depressed mood and anxious and labile affect. (Tr. 499). Dr. Caputo noted that Trejo was "clearly suffering from depression" and diagnosed him with a pain disorder and an adjustment disorder. (Tr. 501). Third, Trejo cites the opinion of state agency psychologist Mark Garner, Ph.D., who reviewed Trejo's medical records and opined that his affective disorder was a severe impairment. (Tr. 130). Finally, Trejo cites treatment notes from a visit to Megan Fondren, PA-C on August 13,

---

*Shepard*, 2017 WL 104095, at *3 (citing *Wireman* for the proposition that a prior decision, vacated by the Appeals Council, does not constitute a final decision binding on the subsequent ALJ under *Drummond*).

2012, where she listed an active diagnosis of depression.  (Tr. 505).

While the foregoing shows that Trejo was well within his right to argue a Step Two error,[7] it does not change the outcome of his case because ALJ Kleber considered and appropriately accounted for this impairment at later steps of the sequential analysis (specifically, in assessing Trejo's RFC).

The law provides that, if ALJ Kleber appropriately considered *all* of Trejo's impairments – both severe and non-severe – in formulating his RFC, then her failure to find additional severe impairments at Step Two does not constitute reversible error.  *See Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987).  Here, it is clear that, in formulating Trejo's RFC, ALJ Kleber appropriately considered his mental impairment, as she specifically limited Trejo to no more than simple, routine, repetitive tasks in an environment involving no more than occasional and superficial interaction with the public or coworkers, and to low-stress, routine, and predictable work "in light of his mild depressive symptoms and his pain."  (Tr. 32).

This mental RFC is supported by the record evidence discussed by ALJ Kleber, including that which bears on the four functional areas specified in the regulations for evaluating mental disorders and in Section 12.00C of the Listings of Impairments, 20 CFR, Part 404, Subpart P, Appendix 1.  (Tr. 29-30).  For instance, ALJ Kleber noted that Trejo reported being independent in his activities of daily living, and was able to prepare his own meals and perform household chores.  (Tr. 29-30).  She also found that Trejo suffered only a mild impairment in social

_____

[7] The Commissioner argues that "[b]ecause the determination proceeded to the RFC stage, the proper way to challenge ALJ Kleber's treatment of Plaintiff's depression was by arguing that the RFC assessment did not capture the full extent of the work-related limitations caused by that impairment."  (Doc. # 18 at 10).  While the Commissioner is correct, as discussed below, that a Step Two error is harmless if the ALJ proceeds to the RFC stage and appropriately accounts for a claimant's severe and non-severe limitations, the Court rejects any suggestion that it was not "proper" for Trejo to challenge the ALJ's Step Two finding.  Indeed, such an argument tends to improperly trivialize the entire Step Two process and may lead to further Step Two errors.

functioning, as evidenced by the fact that he gets along well with his girlfriend and socializes with family on a daily basis. (Tr. 30). Importantly, ALJ Kleber also noted that Trejo was "cooperative at the hearing and he was able to respond to questions appropriately." (*Id.*). ALJ Kleber found that Trejo had mild limitations in concentration, persistence and pace. (Tr. 30). As to this point, the ALJ expressly recognized that competing evidence exists in the record. For instance, she noted that Trejo had alleged problems with memory and concentration and that Dr. Caputo had found that his "emotional lability might inhibit his use of intellectual resources at times, and it would be a significantly inhibiting factor in the work environment." (Tr. 29-30). At the same time, the ALJ noted that Dr. Caputo "opined that Mr. Trejo is able to understand and retain simple and moderately complex instructions" and that "Mr. Trejo's cognition and memory are intact." (*Id.*). The ALJ also noted that there "is no objective evidence of significant difficulty with memory or cognition." (*Id.*). Finally, ALJ *Kleber* noted that Trejo had experienced no extended episodes of decompensation. (*Id.*). The foregoing constitutes substantial evidence in support of the mental RFC adopted by the ALJ.[8]

Thus, because ALJ Kleber appropriately considered Trejo's non-severe mental impairment throughout later steps of the sequential evaluation process, any error in her failure to find this condition severe at Step Two is harmless and does not warrant remand. *See, e.g.,*

---

[8] Importantly, the ALJ's RFC assessment is consistent with the findings of the state agency psychologist, Dr. Garner, relied upon by Trejo. For instance, while Dr. Garner found that Trejo would "have difficulty sustaining effort on detailed tasks," he found that Trejo was not significantly limited in his ability to: carry out "very short and simple instructions;" "perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances;" "sustain an ordinary routine without special supervision;" "make simple work-related decisions;" "maintain socially appropriate behavior and [] adhere to basic standards of neatness and cleanliness;" and "respond appropriately to changes in the work setting." (Tr. 134-35). Dr. Garner therefore concluded that Trejo "can understand and retain simple and moderately complex instructions," has normal cognition, and, despite experiencing "pain issues and depressive symptoms," "retains the ability to do one and two step tasks on a sustained basis." (Tr. 136). Accordingly, Dr. Garner found Trejo was not disabled. (Tr. 137-38).

*Kirkland v. Comm'r of Soc. Sec.*, 528 F. App'x 425, 427 (6th Cir. 2013) (failure to find claimant's carpal tunnel syndrome severe was harmless because the ALJ considered that impairment in assessing the RFC).

### 3.    ALJ Kleber Properly Weighed Dr. Duffy's Opinions

Trejo also argues that ALJ Kleber failed to properly weigh Dr. Duffy's April 16, 2013 opinion, and failed to give good reasons for discounting this opinion.  (Doc. #15 at 22-27).  On April 16, 2013, Dr. Duffy completed a Medical Assessment of Ability to Do Work-Related Activities, in which he opined that Trejo could lift 10 pounds, could stand or walk for 90 minutes in an 8-hour work day (for 10 minutes at a time), and could sit for 90 minutes in an 8-hour work day (for 30 minutes at a time).  (Tr. 520).  Dr. Duffy further opined that Trejo could never climb, balance, stoop, crouch, crawl, or bend, and could only occasionally kneel, reach, handle, push, or pull.  (Tr. 521).  Lastly, Dr. Duffy opined that Trejo could not perform sustained activity at even a sedentary level over an 8-hour work day and would miss 29 of 30 work days in a typical month.  (Tr. 522).

Courts have recognized that an ALJ "'must' give a treating source opinion controlling weight if the treating source opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the] case record.'"  *Blakley*, 581 F.3d at 406 (internal quotations omitted).  While treating source opinions are entitled to controlling weight under these circumstances, it is "error to give an opinion controlling weight simply because it is the opinion of a treating source" unless it is well-supported and consistent with the record as a whole.  *Soc. Sec. Rul. 96-2p*, 1996 WL 374188, at *2 (July 2, 1996); *see also Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) ("Treating physicians' opinions are only given such deference when supported by objective medical evidence.").  If the ALJ declines to give a treating physician's opinion

controlling weight, she must document how much weight she gives it, considering a number of factors, including the "length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (citing 20 C.F.R. §404.1527(c)(2) (ALJ must "give good reasons" for weight given to treating source opinion)).

Because ALJ Kleber declined to afford Dr. Duffy's opinion controlling weight (Tr. 37-38), she was required to provide good reasons in support of her decision to do so. *See Wilson*, 378 F.3d at 545. First, ALJ Kleber found that Dr. Duffy's opinion did not square with Trejo's admission that he performed light duty jobs around the house and was independent with his daily activities (Tr. 38 (citing Tr. 448, 499)), which included hiking in the woods (Tr. 518) and working on a go-cart with his son (Tr. 530). These were valid considerations. *See Miller v. Comm'r of Soc. Sec.*, 524 F. App'x 191, 194 (6th Cir. 2013) (permitting ALJ to use daily activities to discount a treating source opinion); *Maloney v. Comm'r of Soc. Sec.*, 480 F. App'x 804, 808-09 (6th Cir. 2012) (ALJ properly discounted treating physician opinion where it conflicted with plaintiff's own testimony and reports regarding her activities).

ALJ Kleber also discounted Dr. Duffy's opinion because it was "not consistent with his own examination findings during the relevant period." (Tr. 37-38). Specifically, ALJ Kleber observed that, on June 5, 2013, Dr. Duffy noted that Trejo had some atrophy (but full range of motion) in the left leg and decreased range of motion in his back. (Tr. 37 (citing Tr. 524)). And, ALJ Kleber noted that exam findings were the same at Trejo's next visit to Dr. Duffy, on October 30, 2013. (Tr. 37 (citing Tr. 526)). At both of these appointments, Dr. Duffy indicated that back exercises were safe for Trejo to perform, and at the October visit, Dr. Duffy further

16

advised Trejo "to improve his quality of life even if it [means he] takes more meds." (Tr. 524, 526). As ALJ Kleber indicated elsewhere in her decision, Dr. Duffy's recommendation that Trejo exercise was "inconsistent with the functioning of a person who is totally disabled, but is consistent with someone that can perform a restricted range of light work."[9] (Tr. 33).

> Additionally, ALJ Kleber found:

> > … Dr. Duffy's opinion that Mr. Trejo would miss 2[9] of 30 days [of] working to be exceptionally pessimistic, especially in light of the relatively benign physical findings on examination, and Dr. Duffy's conservative approach to treating Mr. Trejo as documented in the record.

(Tr. 37). This too was an appropriate consideration. *See Francis v. Comm'r Soc. Sec. Admin.*, 414 F. App'x 802, 806 (6th Cir. 2011) (ALJ properly discounted an opinion that conflicted with the claimant's conservative treatment); *Leppien v. Comm'r of Soc. Sec.*, 2016 WL 3661851, at *5 (W.D Mich. July 11, 2016) ("The Sixth Circuit has found that conservative treatment may constitute a 'good reason' for discounting a treating physician's opinion."). Trejo argues, however, that he had two prior lumbar surgeries (in October 2005 and November 2005) and that:

> > Dr. Duffy's current treatment of medication and back exercises is a reflection of the treating pain specialist's diagnosis of failed back surgeries. As ALJ Kleber is quick to cite "conservative treatment" or failure to have surgery to reflect a lack of disabling pain perhaps the ALJ should have considered that same factor of 2 prior lumbar surgeries to be supportive of Dr. Duffy's and Plaintiff's statements of disabling pain.

---

[9] Trejo argues that "[t]he ability to do back exercises for a few minutes a day is not consistent with the ability to sustain activity over the course of an 8 hour day at a competitive market work pace." (Doc. #15 at 26). But, ALJ Kleber did not make any such determination; rather, she merely noted that Dr. Duffy's exercise recommendation was inconsistent with his opinion that Trejo could not even work one day per month. (Tr. 33). Regardless, to the extent ALJ Kleber overstated the relevance of Dr. Duffy's exercise recommendations, her ultimate RFC finding is still supported by substantial evidence, including Trejo's "generally … unremarkable" findings on physical examination (Tr. 33), his daily activities (Tr. 37), and the fact that he repeatedly denied trouble sleeping, weakness, or numbness (Tr. 37 (citing Tr. 524, 526, 528, 531)). *See Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012) (noting that erroneous logic is harmless so long as it does not negate the ALJ's ultimate conclusion).

(Doc. #15 at 27 (internal citation omitted)).  As the Commissioner points out, however, ALJ Kleber acknowledged Trejo's previous back surgeries and never faulted Trejo for failing to have additional surgery.  (Tr. 27 ("He had surgery in October 2005 and November 2005, and then developed lumbar radiculopathy.")).  Moreover, the relevant period in this case "substantially post-dates [Trejo's] surgeries." *Gauthier v. Comm'r of Soc. Sec.*, 2014 WL 1304915, at *18 n. 4 (E.D. Mich. Mar. 31, 2014) ("[The claimant] takes issue with the ALJ's characterization of his treatment as 'routine and conservative,' noting that [he] had previously undergone three spinal surgeries.  However, as the Commissioner points out, the ALJ's consideration of [the claimant's] treatment all substantially post-dates his surgeries ….").  Trejo's arguments to the contrary aside, the fact remains that, during the relevant period, Dr. Duffy offered Trejo little more than medication management and recommendations that he exercise, both of which are conservative treatments.  *See, e.g., Pruitt v. Comm'r of Soc. Sec.*, 2011 WL 5075694, at *7 (E.D. Mich. Sept. 14, 2011) ("Plaintiff's treatment has been conservative and limited to pain medication, chiropractic care, exercise and therapy.").

In sum, if Dr. Duffy believed that Trejo's impairments were so disabling as to prevent him from attending a job more than one day a month (Tr. 522), then notwithstanding his two distant failed back surgeries, "[i]t is reasonable to expect that … much more aggressive treatment would have been recommended and received" during the relevant period.  *Oetzman v. Comm'r of Soc. Sec.*, 2014 WL 3573499, at *15 (E.D. Mich. July 21, 2014).  For all of these reasons, the Court finds that substantial evidence supports ALJ Kleber's decision to discount Dr. Duffy's April 2013 opinion.[10]

---

[10] On February 17, 2015, Dr. Duffy wrote a note on a prescription pad indicating that his "recommendations [had] not changed [and were] not likely to change in the foreseeable future." (Tr. 544).  ALJ Kleber considered this opinion but found that, where the record contained no

For all of the above reasons, and upon an independent review of the entire record, the Court concludes that ALJ Kleber's decision is supported by substantial evidence.

## III.   CONCLUSION

For the foregoing reasons, the Court RECOMMENDS that the Commissioner's Motion for Summary Judgment [18] be GRANTED, Trejo's Motion for Summary Judgment [15] be DENIED, and the ALJ's decision be AFFIRMED.

Dated: May 10, 2017                                    s/David R. Grand
Ann Arbor, Michigan                            DAVID R. GRAND
                                                           United States Magistrate Judge

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation and Order, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above.  *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1).  Failure to timely file objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005).  Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have.  *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th

---

treatment records after October 1, 2014, this opinion was due only minimal weight because "Dr. Duffy had not seen Mr. Trejo for several months prior to writing this statement[.]"  (Tr. 28). Trejo argues that this treatment gap was irrelevant because Dr. Duffy had been treating him for over seven years.  (Doc. #15 at 27).  As the Commissioner points out, however, at least one court has found a significant treatment gap to be a relevant consideration, even if the claimant has a lengthy treatment relationship with the doctor.  (Doc. #18 at 23 (citing *Harris v. Astrue*, 285 F. App'x 527, 530 (10th Cir. 2008)).  More importantly, however, Dr. Duffy's February 2015 opinion merely reaffirmed his April 2013 opinion; thus, the former was only as good as the latter and, as discussed above, ALJ Kleber properly discounted Dr. Duffy's April 2013 opinion.

Cir. 2006).  Copies of any objections must be served upon the Magistrate Judge.  *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy.  *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1).  Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on May 10, 2017.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager